Filed 10/22/13  P. v. Lau CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESSICA JANET KUUIPO LAU,<br><br>    Defendant and Appellant. | G047515<br><br>(Super. Ct. No. 12WF0450)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*     \*     \*

A jury convicted defendant Jessica Janet Kuuipo Lau of possession of hydrocodone (i.e., Vicodin) for sale (count 1; Health & Saf. Code, § 11351); possession of alprazolam (i.e., Xanax) for sale (count 3; Health & Saf. Code, § 11375, subd. (b)(1)); receiving stolen property (count 4; Pen. Code, § 496, subd. (a)); and possession of controlled substance paraphernalia (count 5; Health & Saf. Code, § 11364.1, subd. (a)). The court sentenced defendant to six years in county jail.

We appointed counsel to represent defendant on appeal. Counsel filed a brief which set forth the facts and procedural history of the case. Counsel did not argue against his client, but, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, advised the court no issues were found to argue on defendant's behalf. Defendant was given 30 days to file written argument on her own behalf. That period has passed, and we have received no communication from defendant. We therefore examined the entire record on our own, and, having done so, provide a brief description of the facts as established by evidence at trial, the procedural history of the case, and the punishment imposed upon defendant. (See *People v. Kelly* (2006) 40 Cal.4th 106, 123-124.) In the course of our review, we identified one arguable issue regarding the court's determination that defendant was ineligible for probation, for which we sought additional briefing. Following our independent review of the record and the parties' briefing on the issue requested, we affirm.

FACTS

Three witnesses testified at trial, none called by the defense. We summarize below relevant portions of the testimony.

On the afternoon of February 26, 2012, Deputy Sheriff Mark Baltodano was working in an area known for prostitution and drug use in the City of Stanton. Baltodano observed defendant leave room 408 at the motel and walk down a flight of

2

stairs with a male companion. Defendant consented to the search of her room. Baltodano found a number of items that appeared to belong to individuals other than defendant.[1] Baltodano discovered a prescription bottle with 20 Alprazolam pills, a baggie containing four Vicodin pills, two baggies containing a substance that appeared to be methamphetamine, and three glass methamphetamine pipes. Baltodano also located a scale and baggies commonly used for packaging drugs.

During a post-arrest interrogation, defendant admitted to acting as a "middleman" in drug transactions. Defendant explained that the scale and baggies in her room allowed the suppliers to weigh the drugs she distributed to buyers. Defendant stated that when she and the male individual came into contact with Baltodano and his partner, they were on their way to sell drugs. Defendant also admitted she acted as a middleman for stolen property. Based in part on defendant's admissions, Baltodano opined that defendant possessed the substances for sale.

Bill Edinger, a forensic scientist employed by the Orange County Crime Lab, opined that the four pills in the baggie were hydrocodone (Vicodin). He further concluded that the 20 pills found in the unsealed prescription bottle were alprazolam (Xanax). Two baggies contained a "whitish granular solid," which Edinger stated was consistent with methamphetamine. After conducting screening and confirmation tests, Edinger concluded that the white substance was methamphetamine.

---

[1] Some of these items belonged to Kimberly McGill. McGill visited a fitness center in Irvine on February 2, 2012. McGill stored a cloth bag containing her personal belongings in a locker. When McGill returned to her locker, she realized all of her belongings were gone and immediately contacted the police. Based on McGill's inspection of a check at trial, defendant's name was written on the back of the check after the check was taken from McGill. McGill does not know defendant.

# PROCEDURAL HISTORY

*Charging Instruments and Preliminary Hearing*

The second amended complaint charged defendant with the counts specified above, plus possession of methamphetamine for sale (count 2; Health & Saf. Code, § 11378). The second amended complaint also alleged two prior felony convictions.[2] Defendant pleaded not guilty to all counts and denied the existence of all prior convictions. An information accusing defendant of committing the same counts and prior felony convictions as alleged in the second amended complaint was filed in May 2012.

The court, having heard the prosecution's evidence at trial, denied defendant's motion to dismiss count 1 and count 2. (See Pen. Code, § 1118.1.) Having been advised of her constitutional rights, defendant waived her right to testify.

Following deliberations in which the jury could not reach a verdict as to count 2, the jury submitted the verdict forms for counts 1, 3, 4, and 5, pursuant to which they convicted defendant of the charged offenses as set forth above. As to count 2, the court declared a mistrial. The prosecutor moved to dismiss count 2 and the court granted the motion.

Before trial began, defendant elected to waive her right to a jury trial with regard to whether she suffered the charged prior convictions. The court therefore bifurcated the trial. After her jury trial, defendant admitted her two prior criminal

---

[2] As to counts 1 and 2, and pursuant to Health and Safety Code section 11370.2, subdivision (a), defendant was convicted of a felony violation of Health and Safety Code section 11379, subdivision (a), on or about April 21, 2004, and a felony violation of Health and Safety Code section 11378 on November 1, 2010. The November 2010 conviction was also cited as a prior felony that resulted in a prison term under Penal Code section 667.5, subdivision (b).

4

convictions and admitted that she served a term in state prison on one of the prior convictions.

The court found that defendant was statutorily ineligible for probation pursuant to Penal Code section 1203.07, subdivision (a)(11). The court also denied a motion filed by defendant for a "divided sentence" pursuant to Penal Code section 1170, subdivision (h)(5), which would result in defendant being enrolled at a residential recovery program. (See also Pen. Code, § 1170.05.) The court cited defendant's failure to overcome her struggles despite participation in numerous previous treatment programs.

The court sentenced defendant to the middle term of three years on count 1. The court imposed concurrent terms on the other convictions. With regard to defendant's prior convictions, the court sentenced defendant to a three year consecutive sentence pursuant to Health and Safety Code section 11370.2, subdivision (a), based on her admitted April 2004 violation of Health and Safety Code section 11379, subdivision (a). The court determined that, pursuant to Penal Code section 1170, subdivision (h), defendant was entitled to serve her six year sentence in county jail rather than state prison.

DISCUSSION

We have examined the entire record and found only one arguable issue. We briefly discuss each of the potential issues disclosed by counsel's brief and our review of the record.

*Court's Refusal to Provide Instruction Limiting Use of Admissions*

Defendant requested that the court instruct the jury with either CALCRIM No. 375 (which pertains to evidence of uncharged offenses) or a modified version of

5

CALCRIM No. 360.[3]  Defense counsel's argument was that defendant's admissions about being a "middleman" in drug transactions were evidence of prior conduct and should not be used as character evidence to prove that she was acting as a drug dealer with regard to the substances at issue in this case.  The prosecutor argued that the admissions "have to do directly with what happened in this case" and should therefore be available to the jury as evidence of guilt.  The court ruled it was a jury issue as to whether defendant was making admissions with regard to the substances found in her motel room.  The court was not obligated to instruct the jury with CALCRIM Nos. 360 or 375.

*Sufficiency of Evidence to Support Each Conviction*

As set forth above, physical evidence, expert testimony, and defendant's admissions combined to provide evidence of defendant's guilt of the charged offenses.

*Advisement of Constitutional Rights Prior to Defendant Admitting Prior Convictions*

"[A]n accused must be advised of (1) specific constitutional protections waived by an admission of the truth of an allegation of prior felony convictions, and (2) those penalties and other sanctions imposed as a consequence of a finding of the truth of the allegation." (*In re Yurko* (1974) 10 Cal.3d 857, 860.)  Here the court informed defendant with regard to her right to a jury trial or her right to have a bifurcated bench trial as to the issue of whether she committed the charged prior felonies.  "The district attorney would have to put on their evidence, your attorney can put on evidence, and then

---

[3] The proposed instruction stated, "Officer Baltodano testified that in reaching his conclusions as an expert witness, he considered statements made by Jessica Lau.  I am referring only to the statements that she acts as a middle man for narcotics sales transactions.  You may consider those statements only to evaluate the expert's opinion.  Do not consider those statements as proof that the information contained in the statements is true.  [¶]  Do not consider those statements for any other purpose.  [¶]  Do no[t] conclude from this evidence that the defendant has a bad character or is disposed to commit crime."

you can leave it up to me to determine whether they're valid or not. And that can either be done right after the trial or at the time of sentencing. [¶] Or, lastly, you can admit that you suffered those prior convictions, again, if you're [found] guilty." Prior to choosing to bifurcate the trial, defendant agreed she had discussed the advantages and disadvantages of her various options with regard to the charged prior convictions. Defendant explicitly waived her right to have a jury decide the prior conviction allegations. At the sentencing hearing, defense counsel spoke off the record to defendant about whether to admit the priors. After this conversation, defendant admitted the prior convictions. When the only potential "error is a failure to advise of the penal consequences, the error is waived if not raised at or before sentencing." (*People v. Wrice* (1995) 38 Cal.App.4th 767, 770-771.)

*Imposition of Sentence*

We discern no error in the six-year county jail term imposed on defendant or the other facets of her sentence (i.e., credits, fines, fees, registration requirement, DNA testing). But our review of the record revealed the possibility of error in the court's determination that defendant was statutorily ineligible for probation under Penal Code section 1203.07, subdivision (a)(11). This statute states in relevant part that "probation shall not be granted to" "[a]ny person convicted of violating Sections 11351, 11351.5, or 11378 of the Health and Safety Code *by possessing for sale cocaine base, cocaine, or methamphetamine*, or convicted of violating Section 11352 or 11379 of the Health and Safety Code, *by selling or offering to sell cocaine base, cocaine, or methamphetamine* and who has one or more convictions for violating" certain controlled substance offenses. (Italics added.)

The jury convicted defendant of count 1, a violation of Health and Safety Code section 11351, but the substance at issue was hydrocodone (not "cocaine base, cocaine, or methamphetamine"). The court dismissed count 2, pursuant to which

7

defendant was charged with a violation of Health and Safety Code section 11378 for her alleged possession with intent to sell methamphetamine. Defendant's other convictions do not trigger Penal Code section 1203.07, subdivision (a)(11). Indeed, the information only mentions Penal Code section 1203.07, subdivision (a)(11) in connection with counts 1 and 2. The court erred by concluding defendant was statutorily ineligible for probation.

But any error was harmless, as it is not reasonably probable the court would have granted probation to defendant had it realized it was authorized to do so. (See *People v. Gutierrez* (1987) 195 Cal.App.3d 881, 884-885 [court wrongly found sex offender was not eligible for probation, but no reasonable probability court would have granted probation if error had not been made].) We are confident in making this determination because the court declined defendant's request to be placed in a treatment facility for part of her sentence pursuant to Penal Code section 1170, subdivision (h)(5). Defendant asked to serve part of her sentence in the less restrictive environment of a "Christian Recovery Home for women who have had problems with drugs, alcohol, prostitution or crime." Presumably, had the court thought probation to be an appropriate sentence, the court would have been receptive to reducing defendant's stay in county jail.

DISPOSITION

The judgment is affirmed.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

9